UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL KENNEDY,

        Petitioner,

vs.                              Case No. 3:18-cv-721-BJD-JRK

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

## **ORDER**

## I.  INTRODUCTION

Petitioner Michael Kennedy challenges his state court (Duval County) conviction for two counts of aggravated assault with a discharge of a firearm (counts one and two) and one count of shooting or throwing a deadly missile (count 3) through a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody (Petition) (Doc. 1).  In response, Respondents filed their Response (Doc. 20).[1]  Thereafter, Petitioner filed a Reply to the

---

[1] Respondents filed Exhibits (Doc. 20).  The Court will refer to the Exhibits as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit.  Otherwise, the page number on the document will be referenced.  For the Petition, Response, and Reply, the Court references the page numbers assigned by the electronic filing system.

State's Response (Reply) (Doc. 23) and a Notice of Filing Missing Page (Doc. 25).  See Order (Doc. 10).

Upon review, Petitioner raises eight grounds in his Petition; however, in his Reply he concedes the following grounds: three, five, six, and seven.   Reply at 24, 36-37.   Respondents calculate the Petition is timely.   Response at 17-18.

As far as exhaustion, Respondents assert Petitioner failed to properly exhaust ground eight of the Petition.   Response at 35-36.   Petitioner admits ground eight is unexhausted and concedes that issue, Reply at 37-39, but asserts his default of ground eight should be excused based on Martinez v. Ryan, 566 U.S. 1, 14 (2012).

As for grounds one, two, and four, Petitioner raised similar grounds in his Rule 3.850 motion for postconviction relief in the state courts, Ex. 14 at 41-45, 50, 56-61, and has exhausted his state court remedies by appealing the denial of postconviction relief.   Ex. 18; Ex. 19; Ex. 21.   Thus, these grounds are ripe for review.

## II.   EVIDENTIARY HEARING

Petitioner, in his Reply at 15, states he is entitled to an evidentiary hearing.   "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing."   Jones v. Sec'y, Fla. Dep't of

Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017).   To be entitled to an evidentiary hearing, the petitioner must allege "facts that, if true, would entitle him to relief."   Martin v. United States, 949 F.3d 662, 670 (11th Cir.) (quoting Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)) (citation omitted), cert. denied, 141 S. Ct. 357 (2020). See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (same).

If the allegations are contradicted by the record, patently frivolous, or based upon unsupported generalizations, the court is not required to conduct an evidentiary hearing.   Martin, 949 F.3d at 670 (quotation and citation omitted).   In this case, the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, the Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).   Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief.

Therefore, the Court finds Petitioner is not entitled to an evidentiary hearing in this Court.  Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

### III.   HABEAS REVIEW

Through his Petition for habeas relief, Petitioner is claiming he is detained "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this prisoner's federal petition for habeas corpus and "restricts the power of federal courts to grant writs of habeas corpus based on claims that were 'adjudicated on the merits' by a state court."  Shinn v. Kayer, 141 S. Ct. 517, 520 (2020) (per curiam).  See 28 U.S.C. § 2254; Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted) (acknowledging the deferential framework of AEDPA for evaluating issues previously decided in state court), petition for cert. filed, (U.S. Nov. 6, 2020); Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

The framework for this Court's review is as follows:

> [federal courts] are prohibited from granting a state prisoner's habeas corpus petition unless the relevant state court decision on the merits of the petitioner's claim 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

> States,' or (2) 'was based on an unreasonable
> determination of the facts in light of the evidence
> presented in the State court proceeding.'

James v. Warden, Holman Corr. Facility, 957 F.3d 1184, 1190 (11th Cir. 2020)

(quoting 28 U.S.C. § 2254(d)(1)-(2)), petition for cert. filed, (U.S. Nov. 18, 2020).

This high hurdle is not easily surmounted:

> A decision is "contrary to" clearly established
> federal law if the state court applied a rule that
> contradicts governing Supreme Court precedent, or if
> it reached a different conclusion than the Supreme
> Court did in a case involving materially
> indistinguishable facts. Williams v. Taylor, 529 U.S.
> 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000).
> A state court decision involves an "unreasonable
> application" of clearly established federal law if the
> court identifies the correct legal principle but applies
> it unreasonably to the facts before it. Id. "The question
> under AEDPA is not whether a federal court believes
> the state court's determination was incorrect but
> whether that determination was unreasonable – a
> substantially higher threshold." Schriro v.
> Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 167 L.Ed.2d
> 836 (2007).

James, 957 F.3d at 1190-91.  Under this restricted review, if the state court

applied clearly established federal law to reasonably determined facts when

determining a claim on its merits, "a federal habeas court may not disturb the

state court's decision unless its error lies 'beyond any possibility for fairminded

disagreement.'" Shinn v. Kayer, 141 S. Ct. at 520 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

This Court, in undertaking its review, is obliged to apply the following. A state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary." Sealey, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)). This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014). Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference." Dallas v. Warden, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)). As such, a federal district court may not supersede a state trial court's determination simply because reasonable minds may disagree about the finding. Id. (quotation and citation omitted).

Finally, this Court must employ, where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order

upholding that judgment, a "look through" presumption; this Court should "look through" the unexplained decision of the state court to that of the last related state-court decision that actually provides relevant rationale.   Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).   Then, this Court should presume the state court's unexplained decision adopted the same reasoning of the last related state-court decision with relevant rationale.   Id.

## IV.   EXHAUSTION AND PROCEDURAL DEFAULT

A federal district court should not entertain a federal petition unless the petitioner has first exhausted his state court remedies.   Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509 (1982).   A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'"   Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003)), cert. denied, 558 U.S. 1151 (2010).   The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under

which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[2] <u>supra</u>, at 747-748, 111 S. Ct. 2546; <u>Sykes</u>,[3] <u>supra</u>, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. ----, ----, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S.---, ----, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012).

As there are allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law[,]"   <u>Martinez</u>, 566 U.S. at 10 (citing <u>Coleman</u>, 501 U.S. at 750), and to demonstrate cause, a petitioner must show some objective factor external to the defense impeded his effort to properly raise the claim in state court.   <u>Wright v. Hopper</u>, 169 F.3d

---

2 <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

3 <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

695, 703 (11th Cir.), <u>cert. denied</u>, 528 U.S. 934 (1999).   If cause is established, a petitioner must then demonstrate prejudice.   To demonstrate prejudice, a petitioner must show "there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred."   <u>Owen</u>, 568 F.3d at 908.   In the alternative, a petitioner may obtain review of a procedurally barred claim if he satisfies the actual innocence "gateway" established in <u>Schlup v. Delo</u>, 513 U.S. 298 (1995).   The gateway exception is designed to prevent a constitutional error at trial from causing a miscarriage of justice and conviction of the actually innocent.   <u>Kuenzel v. Comm'r, Ala. Dep't of Corr.</u>, 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (citation omitted), <u>cert. denied</u>, 569 U.S. 1004 (2013).

In addressing the question of exhaustion, this Court must ask whether the claim was raised in the state court proceedings and whether the state court was alerted to the federal nature of the claim:

> Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction. <u>See</u> 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1302 (11th Cir. 2005). The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim

'federal.'" <u>Baldwin v. Reese</u>, 541 U.S. 27, 32, 124 S. Ct. 1347, 158 L.Ed.2d 64 (2004). The Court's guidance in <u>Baldwin</u> "must be applied with common sense and in light of the purpose underlying the exhaustion requirement"-namely, giving the state courts "a meaningful opportunity" to address the federal claim. <u>McNair</u>, 416 F.3d at 1302. Thus, a petitioner could not satisfy the exhaustion requirement merely by presenting the state court with "all the facts necessary to support the claim," or by making a "somewhat similar state law claim." <u>Kelley</u>,[4] 377 F.3d at 134-44. Rather, he must make his claims in a manner that provides the state courts with "the opportunity to apply controlling legal principles to the facts bearing upon (his) [federal] constitutional claim." <u>Id</u>. at 1344 (quotation omitted).

<u>Lucas v. Sec'y, Dep't of Corr.</u>, 682 F.3d 1342, 1351-52 (11th Cir. 2012), <u>cert. denied</u>, 568 U.S. 1104 (2013).

## V.   INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims he received the ineffective assistance of trial counsel. Claims of ineffective assistance of counsel are "governed by the familiar two-part <u>Strickland</u>[v. Washington, 466 U.S. 668 (1984)] standard." <u>Knight v. Fla. Dep't of Corr.</u>, 958 F.3d 1035, 1038 (11th Cir. 2020), <u>petition for cert. filed</u>, (U.S. Jan. 7, 2021).   In order for Petitioner to prevail, he must satisfy the two-pronged <u>Strickland</u> test, requiring he show both deficient performance

---

4 <u>Kelley v. Sec'y for the Dep't of Corr.</u>, 377 F.3d 1317 (11th Cir. 2004), <u>cert. denied</u>, 545 U.S. 1149 (2005).

(counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). Id. (quotation and citation omitted).   See Brewster v. Hetzel, 913 F.3d 1042, 1051-52 (11th Cir. 2019) (reviewing court may begin with either component).

The Eleventh Circuit recently opined,

> because "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,' . . . when the two apply in tandem, review is 'doubly' so.   Harrington [v. Richter, 562 U.S. 86, 105 (2011)] (internal citations and quotation omitted).   Thus, under § 2254(d), "the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."   Id.

Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 795 (11th Cir. 2020).

## VI.   GROUND ONE

> GROUND ONE: Counsel was ineffective for not investigating and presenting witnesses to establish that Petitioner's waiver of his Miranda rights and consent to search his vehicle were involuntary due to intoxication.

Petition at 8.

In the supporting facts, Petitioner asserts his counsel was ineffective for failure to investigate and call three witnesses, Hope Simmons, Robert Allen, and Dr. Steward, to testify at the suppression hearing and/or trial.   Id. at 10.

Petitioner submits that these witnesses were available and would have testified at the hearing or trial.   Id.   Petitioner alleges that these witnesses would have testified that Petitioner "was very intoxicated" when he waived his Miranda[5] rights, made his statement to the police, and consented to the search of his vehicle.   Id. at 10-11.

Petitioner contends his level of intoxication rendered his waiver, his consent, and his statement unknowingly and non-intelligently performed.   Id. at 11.   As such, Petitioner asserts that the witnesses' testimony would have resulted in the trial court granting suppression of the post-Miranda statements and the evidence seized during the search of Petitioner's vehicle.   Id.   In support, Petitioner states his counsel knew the names, addresses, and the proposed testimony of each witness.   Id.   Ultimately, Petitioner states, counsel decided not to call these three witnesses, rendering his performance deficient.   Id.   Petitioner asserts his attorney's decision was not reasonable under prevailing professional standards.   Id.   Petitioner contends he was prejudiced because there is a reasonable probability that had counsel called these three witnesses, the trial court would have granted the motion to suppress the critical evidence, including the firearm.   Id. at 11-12.

---

5  Miranda v. Arizona, 384 U.S. 436 (1966).

Relying on the <u>Strickland</u> two-pronged standard, the trial court denied the Rule 3.850 motion.   Ex. 18 at 470-71.   The 1st DCA affirmed per curiam. Ex. 21.   The mandate issued on October 24, 2017.   <u>Id</u>.

The trial court, in reviewing Petitioner's Rule 3.850 motion, found he raised a Sixth Amendment claim that trial counsel rendered ineffective assistance of counsel through his failure to investigate and present evidence regarding Petitioner's level of intoxication.   Ex. 18 at 471.   In denying the post-conviction motion, the court noted that Petitioner argued that two lay witnesses should have been called to testify as to Petitioner's level of impairment and one doctor should have been called to testify about the effects of beer and Xanax.   <u>Id</u>. at 472.

Notably, the factual allegations provided in the Petition to support this ground belie Petitioner's assertion that counsel failed to investigate the witnesses.   Indeed, Petitioner states counsel knew the names, addresses, and the proposed testimony of each witness.[6]   Therefore, there could be no failure to investigate to the extent necessary to deprive Petitioner of his Sixth Amendment right to counsel.   Further, Petitioner states his attorney decided not to call these witnesses although he was aware of them.

---

6 Of import, defense counsel disclosed to the prosecution the name of Robert Allen as a witness.   Ex. 1 at 51.   Counsel also disclosed Donna Kennedy, Petitioner's mother, as a witness.   <u>Id</u>. at 39.

At the outset, this Court notes that Petitioner failed to provide affidavits or any other documented testimony from these proposed witnesses, nor did Petitioner provide the state court with affidavits, depositions, or comparable documentation from these witnesses.   Consequently, Petitioner's contention that the three witnesses' testimony would have been helpful was speculative as no actual testimony of these witnesses, affidavits, or depositions, was provided to the state courts or even this Court.   Petitioner's self-serving speculation is insufficient to sustain his claim of ineffective assistance of counsel.   See Morris v. Sec'y, Dep't of Corr., No. 8:07-CV-1830-T-27AEP, 2010 WL 5330505, at *7 (M.D. Fla. 2010) (not reported in F.Supp.2d) (based on the lack of any sworn affidavits or depositions from potential witnesses stating to what they would have testified, a petitioner fails to make the requisite factual showing and counsel's performance could not be deemed to be deficient).

Alternatively, based on Petitioner's statements in the Petition, defense counsel knew of these witnesses and the record shows counsel even listed Mr. Allen as a possible witness in a discovery document.   Counsel did not call these witnesses at the suppression hearing.   Additionally, at trial, counsel did not call Mr. Allen, Ms. Hope, and Dr. Stewart.

Of import, at trial, Petitioner told the court the witness he wanted defense counsel to call was his mother, Donna Kennedy.   Ex. 5 at 360.

14

Petitioner elected not to take the stand, and, upon the court's further inquiry, Petitioner told the court there were no other witnesses he would like for his attorney to call for him other than his mother.  <u>Id</u>. at 359-60.  Thereafter, defense counsel called Ms. Kennedy to testify.  <u>Id</u>. at 363-66.

The decision as to whether to present witness testimony is a strategic one, left within trial counsel's domain.  <u>Chaflin v. Sec'y, Dep't of Corr.</u>, No. 6:09-cv-2055-Orl-31KRS, 2011 WL 280940, at *3 (M.D. Fla. Jan. 26, 2011) (not reported in F.Supp.2d).  Giving wide latitude to counsel in making strategic decisions, including whether to present witnesses, the Court concludes counsel's performance did not fall outside the norm.  The decision not to call these three witnesses, a tactical decision, did not amount to deficient performance as this decision did not fall below the broad range of reasonable assistance under prevailing professional norms.  Indeed, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."  <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir.) (citation omitted), <u>cert. denied</u>, 516 U.S. 856 (1995).

In the alternative, the Court finds the state court's determination is consistent with federal precedent.  In denying post-conviction relief, the trial court properly applied the two-pronged <u>Strickland</u> standard of review. Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the

state court rejected this claim based on <u>Strickland</u>.   Further, Petitioner has not shown the state court unreasonably applied <u>Strickland</u> or unreasonably determined the facts.   Indeed, upon review, the state court was objectively reasonable in its <u>Strickland</u> inquiry.   Furthermore, the 1st DCA affirmed the decision of the trial court.

In denying this claim of ineffective assistance of counsel, the trial court explained that generally, intoxicants affect the credibility of the confession, not voluntariness.   Ex. 18 at 472.   The court noted defense counsel filed a motion to suppress arguing the voluntariness of the consents and confession asserting impairment and other issues.   <u>Id</u>.   The trial court conducted a suppression hearing.   <u>Id</u>. at 473.   The court heard testimony concerning Petitioner's level of impairment.[7]   <u>Id</u>.   Moreover, the court listened to a video recording of

---

[7] At the suppression hearing, the trial court heard the testimony of Officers Pelletier and Whitman.   Ex. 2 at 224-41.   Petitioner testified as well.   <u>Id</u>. at 242-51.   Officer Pelletier testified that Petitioner told him he had three or four beers and had not taken any drugs. <u>Id</u>. at 228.   Office Pelletier said Petitioner had no trouble understanding or communicating with the officer.   <u>Id</u>. at 230.   Officer Whitman testified that during his interview, Petitioner advised he had four or five beers between 1300, 1330 to about nine that night.   <u>Id</u>. at 234. The interview took place about twelve hours after Petitioner had his first beer.   <u>Id</u>. Petitioner advised Officer Whitman that he takes Xanax to calm his nerves, but he could not remember the last time he took one or how many.   <u>Id</u>. at 235, 240.   Petitioner told the officer he had no problem comprehending or understanding the conversation.   <u>Id</u>. at 235. Petitioner even reenacted parts of the event using a toy gun.   <u>Id</u>. at 236.   Petitioner testified he consumed four or five beers from noon to 9:00 p.m.   <u>Id</u>. at 244.   He attested he took Xanax but could not recollect when he took them.   <u>Id</u>. at 244-45.   The record includes the Constitutional Rights form and the Consent to Search the vehicle form signed by Petitioner at the scene.   Ex. 1 at 97-98.

16

Petitioner's interview, allowing the court to assess Petitioner's demeanor and speech.[8]  Id.  The jury also was able to assess Petitioner's demeanor and speech as they watched the video-recorded interview.  Id.  Additionally, the jury heard testimony of witnesses as to the extent of Petitioner's level of intoxication.  Id.

The trial court concluded that additional witness testimony as to Petitioner's level of intoxication would have been cumulative; therefore, insufficient to support a claim of deficient performance.  Id.  Finding no deficient performance, the court next addressed the question of prejudice under Strickland.  Id.  The court found the second prong of the Strickland test was not met as Petitioner "was not prejudiced under Strickland by counsel's failure to present testimony from an expert on alcohol consumption."  Id.

In denying post-conviction relief, the trial court also relied upon Petitioner's statements at trial that he only wanted his mother to testify on his behalf.  Id. at 474.  The record demonstrates Petitioner did not request that his counsel call Mr. Allen, Ms. Hope, and Dr. Stewart as witnesses.

---

[8] The trial court, as well as the jury, viewed the video of Petitioner's police interview. Tellingly, during the interview, when asked about selling pain pills in the past, Petitioner asked if he had to answer those questions, exhibiting his alertness and awareness of the situation and his depth of understanding of the questions he was being asked.  Ex. 5 at 344.

Although unexplained, the 1st DCA's decision is entitled to AEDPA deference.   Ex. 21.   Applying the look-through presumption set forth in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   In sum, the state court's adjudication of the claim is not contrary to or an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts.   Thus, ground one is due to be denied.

Under these circumstances, defense counsel's performance cannot be deemed deficient.   Although every attorney may not have chosen the same approach or strategy, defense counsel's performance did not so undermine the proper functioning of the adversarial process that Petitioner was deprived of his Sixth Amendment right to the effective assistance of counsel or a fair trial. Petitioner has failed to establish that no competent counsel would have made the same decisions counsel made at the suppression hearing and at trial with regard to which witnesses should be called.   The Court finds Petitioner has failed to satisfy the Strickland requirements and he is not entitled to habeas relief on ground one.

## VII.   GROUND TWO

> GROUND TWO:   Counsel was ineffective for conceding the Petitioner's guilt without the consent of the Petitioner.

Petition at 13.   In his supporting facts, Petitioner quotes part of counsel's closing argument.   Id. at 14.   It reads:

> Ah-ha, this crime, this element, this was proven. This is why they have this crime, for the facts of this case.   Mr. Kennedy knowingly, and you heard him say it, he acted out, he discharged a firearm, and where did he do it, he did it on the right of way of a paved road or, in this case, the street.
>
> And did he do it in public?   Absolutely.   The testimony was he did it in front of Robbie Allan.   He did it [in] front of Mr. Piercy.   They were in the vehicle.   They were there.   They heard it.   It's public.   It's outside.   It's in a neighborhood.
>
> You're going to find Mr. Kennedy committed a crime this day, and unfortunately, as a defense attorney, he may not be not guilty.   I may not in good faith be able to get up here and say he didn't do anything wrong that day.

Ex. 5 at 436-37.

Petitioner asserts his counsel did not consult with Petitioner or obtain Petitioner's consent prior to making this concession of guilt to the jury. Petition at 14.   He submits counsel's performance was constitutionally deficient for conceding guilt and prejudice is presumed as counsel did not subject the state's case to meaningful adversarial testing, citing United States

19

v. Chronic, 466 U.S. 648 (1984) and Nixon v. Singletary, 758 So. 2d 618 (Fla. 2000).   Petition at 15 n.1.

The Petition itself belies Petitioner's assertion that Petitioner did not agree with this tactic to admit to lesser-included offenses in order to attempt to avoid a conviction at trial on the greater offenses.   Indeed, Petitioner states in his Petition:

> **The Petitioner's primary defense at trial was that [the] State could not and did not prove that the Petitioner committed the charged offenses beyond a reasonable doubt.   Instead, if Petitioner is guilty of lesser-included offenses [sic].**
>
> The State's improper argument adversely impacted the Petitioner's defense. **The Petitioner argued that the State had proved him guilty only of lesser-included offenses,** but the State's improper argument implied that the Petitioner had the burden of proof -not the State- and that the Petitioner was at fault for subjecting the jury to the rigors of a trial.
>
> Because of the highly suggestive nature of the State's comments and the adverse impact the State's comments had **on the Petitioner's goal to achieve a conviction of a lesser-included offense**, therefore the State's improper comments were not harmless.   There exists a reasonable probability that such an appellate review would have resulted in the Petitioner's convictions being reversed – a different outcome in the Petitioner's case.

Petition at 18-19 (emphasis added).

The trial record demonstrates Petitioner's intended line of defense of being guilty of only lesser included offenses was announced at the inception of the trial.   Of initial importance, the record shows the defense knew the video was going to played for the jury as the motion to suppress had been denied prior to trial.   Thus, the jury was going to hear Petitioner's interview, and his admission to discharging a firearm in public, a first-degree misdemeanor. Fla. Stat. § 790.15(1) (Discharging firearm in public or on residential property).

As noted by Petitioner, Petitioner's goal was to achieve a conviction of a lesser-included offense, and the defense's trial strategy was directed to achieve this goal.   As such, in opening statement, defense counsel told the jury:

> And there won't be any question that a gun was discharged, but the reason there won't be any question is because of Mr. Kennedy.  He told the truth.  He did it twice on June the 7th, 2009, and he also provided the only direct evidence of the shooting, which would be the gun.  He will be the one that brought that evidence, because he wasn't hiding anything, and that will be depicted on the video that you'll get to see for yourself, where he does a reenactment.  However, I suggest the gun is pointed down at the ground and not aimed at a window, but towards a tire, as the car is driving off at a normal speed.

Ex. 4 at 155.   Defense counsel referenced the state's comment during voir dire that the jury's duty was to determine "whether there was a crime committed

and if Mr. Kennedy committed that crime." Id.  Defense counsel continued

in this vein:

> However, there is a third thing you'll be asked to
> determine, and that is what crime was committed,
> because when Mr. Kennedy admitted and said, I shot
> a gun, I was in a discussion, in an argument with Anna
> Bass about money that she owed me.   He didn't admit
> to an aggravated assault or to shooting or throwing a
> deadly missile into a car because that isn't what he
> did.   He admitted to discharging a gun.   He did.
>
> So what the government will ask, and has just
> asked, is that you find Mr. Kennedy guilty as charged,
> there will be other options, there will be other verdicts,
> and you will be explained and given those choices.
> And I submit to you that even if a crime was
> committed on June the 7th, 2009, it is not as charged,
> and it is Mr. Kennedy who will explain to you what
> happened and will explain to you exactly what crime,
> if any, was committed.

Id. at 155-56.

Defense counsel provided the instructions for the lesser crimes, and the

prosecutor added them to the charge (assault, discharging a firearm, improper

exhibition of a firearm) to be read by the court.   Ex. 5 at 368.   The court

instructed the jury on the lesser offenses for aggravated assault.   Id. at 378-

79.   The court also instructed the lesser included crimes for shooting or

throwing deadly missiles (attempted shooting or throwing deadline missiles

and discharging firearms in public).   Id. at 379-80.

Petitioner raised his claim of ineffective assistance of counsel in his post-conviction motion.   Ex. 13 at 23-24, 50.   The trial court adopted the state's response and record attachments and found Petitioner was not entitled to relief.   Ex. 18 at 475.   The 1st DCA affirmed.   Ex. 21.

In the state's response to the Rule 3.850 motion, it noted that when Petitioner was interviewed at the scene of the crime and during a videotaped interview, he made several statements that he discharged a firearm in public. Ex. 15 at 69.   The jury watched the videotape.   <u>Id</u>.   The state submitted: "[t]he attorney argued that somewhere between the Defendant confessing to perhaps committing a crime, the crime of discharging a firearm in public, and the crime charged, aggravated assault, it would be the jury's job to seek the truth and decide whether or not the Defendant did in fact discharge a firearm in public."   <u>Id</u>. at 70.

The state referenced the decision in <u>Harris v. State</u>, 768 So. 2d 1179, 1181-1183 (Fla. 4th DCA 2000) in support of its contention that Petitioner is not entitled to an evidentiary hearing on his claim.   <u>Id</u>. at 71-72.   In <u>Harris</u>, the court opined that even assuming deficient performance in conceding guilt on lesser includes offenses without consent, there is no prejudice when the "attorney's concession constituted a reasonable tactical decision made in consideration of the overwhelmingly inculpatory evidence of appellant's

statement to the police and other trial testimony." <u>Id</u>. at 1183.   Indeed, to deny participation at all in the charged crimes would have proved more harmful to the defense in light of the wealth of incriminating evidence, including the defendant's own statements to the police.   <u>Id</u>.

The state urged the trial court to summarily deny relief as Petitioner failed to satisfy the first prong of <u>Strickland</u>, the performance prong.   Ex. 15 at 72.   The trial court adopted the state's argument and summarily denied relief, attaching the state's exhibits.   Ex. 18 at 475.   The 1st DCA affirmed. Ex. 21.

The Court finds the state court's determination is consistent with federal precedent.   Although unexplained, the 1st DCA's decision is entitled to AEDPA deference.   Applying the look-through presumption set forth in <u>Wilson</u>, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   Ground two is due to be denied as the state court's adjudication of the claim is not contrary to or an unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts.

## VIII.   GROUND FOUR

GROUND FOUR:   Counsel was ineffective for not moving for a msitrial [sic] when the Trial Court

> prohibited the defense from arguing that the victim
> was not in fear - an element of the crime.

Petition at 21.

In his supporting facts, Petitioner argues his counsel's performance was deficient for failing to preserve for appellate review the trial court's efforts to improperly limit the defense from arguing that the state failed to prove the victims' well-founded fear of imminent violence.   <u>Id</u>. at 23-24.   Petitioner contends that had his counsel objected and moved for mistrial, the matter would have been preserved for appellate review.   <u>Id</u>. at 24.

The record shows Petitioner raised a comparable ground in the state courts in an amended Rule 3.850 motion.   Ex. 14 at 56-61.   The trial court, in denying this ground, couched this claim as follows:   "[i]neffective assistance of counsel in failing to move for a mistrial upon the trial court's order disallowing the defense to further dispute that the state failed to prove an element of the offense."   Ex. 18 at 479.   The trial court found counsel preserved this issue for appellate purposes by filing a motion for new trial which included this ground.   <u>Id</u>.   Thus, the court found Petitioner had failed to establish error on the part of counsel that prejudiced Petitioner's case, applying the <u>Strickland</u> standard.   <u>Id</u>.   The 1st DCA affirmed.   Ex. 21.

The record contains a Motion for New Trial which includes the following ground:

> The Court erred in ruling that Defense Counsel could not argue the element of fear in their closing argument or else the Court would allow the State to mention a child located in the victim's car; said child was the subject of a Motion in Limine which was stipulated to prior to trial because there was no relevancy to a child being in the car and it would have been highly inflammatory.   FS 90.401; 90.403. see also <u>Tindle v. State</u>, 832 So.2d 966 (Fla. 5th DCA 2002).   Because the charges included two counts of aggravated assault, the element of fear was a crucial part of the case.

Ex. 1 at 100-101.   The court denied the motion for new trial.   <u>Id</u>. at 146.

The record also shows that Petitioner, on direct appeal, raised the claim that the trial court reversibly erred in limiting closing argument.   Ex. 7 at 17-21.   The 1st DCA affirmed per curiam.   Ex. 10.   The mandate issued December 21, 2012.   <u>Id</u>.

To the extent Petitioner's claim of prejudice "rests entirely on the failure to preserve this issue for appeal[,]" the claim is without merit.   <u>Agaro v. Sec'y, Fla. Dep't of Corr.</u>, No. 3:18-cv-341-J-34PDB, 2020 WL 6161469, at * 8 (M.D. Fla. Oct. 21, 2020).   The relevant prejudice inquiry is focused on trial, not the appeal, as "there is no clearly established federal law by the Supreme Court specifically addressing whether the federal court should examine the prejudice

on appeal rather than at trial in a case [where an issue was raised but not properly preserved]." Carratelli v. Stepp, 382 F. App'x 829, 832 (11th Cir. 2010) (per curiam).   Assuming arguendo counsel failed to properly preserve the issue, the 1st DCA would have had to determine whether the error constituted fundamental error "such that preservation would not be required." Agaro, 2020 WL 6161469, at *8.   As no fundamental error was found as exhibited by the affirmance of the 1st DCA on direct appeal, Petitioner did not establish fundamental error; therefore, he cannot establish prejudice under Strickland.   Thus, Petitioner is not entitled to habeas relief on ground four.

Alternatively, this claim of ineffective assistance of counsel is due to be denied as the record shows the trial court did not prohibit the defense from arguing that the victims were not in fear, an element of the crime of aggravated assault.   The court did limit the defense's closing argument in light of the granting of the defendant's motion in limine concerning the fact that there was a child in the car but did not prohibit extensive argument on the element of the victims' sense of fear.

The record shows, in closing, defense counsel pointed out that this was not a sudden event, but rather a long drawn out altercation, and he asked the jury to determine whether Ms. Bass was really scared during this lengthy conversation.   Ex. 5 at 409-10.   Defense counsel speculated, if the victim was

really scared, would not she have simply given Petitioner some money owed to him, as he requested.   Id. at 410.   Defense counsel told the jury the gun was in Petitioner's waistband and was not being waved around, "it's not scaring her[.]"   Id. at 411.   Defense counsel further argued that Mr. Piercy was not scared, and he did not depart in a hurry.   Id. at 412, 415-16.   Defense counsel described Mr. Piercy's reaction to the altercation as "pissed" or mad, not scared. Id. at 416-17.

Defense counsel said, "[a]ll you need is one reasonable doubt to find Mr. Kennedy not guilty or guilty of a lesser included offense which he may have committed on June 7th."   Id. at 426.   Counsel pointed to the fact that the state did not present the best evidence of the demeanor of the victims as the 911 call was not introduced into evidence and the first officer on the scene did not testify; therefore, counsel argued there was a lack of evidence showing the victims were scared.   Id. at 428.

The court did not restrict the extensive argument concerning lack of fear on the part of the victims until the state objected that Petitioner was crossing the line concerning the defendant's motion in limine about not discussing the child.   Id. at 431.   Some background will be provided to provide context for this issue.   The record shows that prior to trial, the defense filed a motion in limine.   Ex. 1 at 52-54.   The defense sought to prohibit the state from making

mention that a minor was in the victim's vehicle at the time of the incident as it would be highly prejudicial to the defense.   Id.   This motion was discussed outside the presence of the jury.   Ex. 4 at 129.   The state agreed to redact any mention of the baby from Petitioner's interview, to not mention the baby in opening and closing remarks, and to not make it a feature of the trial.   Id. at 130.   The state did express its concern that if Petitioner persists in asking certain questions, the answer may lead to a statement that the baby was in the car.   Id. at 131.

Defense counsel noted, the fact of the baby being in the car does not prove any element, "unless we say to the person, in order to negate the element of fear, you weren't afraid because you walked – you got out of the car."   Id. at 134.   Defense counsel continued:   "we're not going to take advantage of the fact that it has been kept out and tread on things that are going to end up . . . eliciting it[.]"   Id. at 135.   The court cautioned the parties to tread carefully to avoid making this an issue at trial.   Id. at 130, 133, 135.

When defense counsel broached the subject of the required elements for the offense of aggravated assault, the prosecutor made an objection concerning counsel's argument about "well-founded fear" and why the victims did not jump in the car and speed away.   Ex. 5 at 430-31.   The prosecutor said the defense agreed not to make that argument, but now the defense was beating the state

over the head with it and stating the victims just drove away slowly.   Id. at

432.   The prosecutor complained that defense counsel was getting into why

the victims did not do certain things, and the answer would have been they

were scared for the child.   Id. at 433.   At that point, the court warned defense

counsel to stop going in that direction, otherwise, the defense was opening the

door to the subject of the motion in limine.   Id. at 433-34.   The court said

counsel already addressed the element of fear and need not say more on that

topic.   Id. at 434.

Under these circumstances, defense counsel was not ineffective for

failure to move for a mistrial.   Defense counsel made extensive argument that

the victims were not in fear.   Thus, the trial court did not prohibit the defense

from making its argument challenging whether the state had proved the

element of fear to justify a jury verdict finding Petitioner guilty of aggravated

assault.   It was not until this argument began to tread on the reason why the

victims did not speed away in the car that the court limited defense counsel's

argument to avoid touching on the matter underlying the defendant's motion

in limine.   As such, the trial court did not commit error and counsel was not

ineffective for failure to move for mistrial.

As Respondents argue, to support a motion for mistrial, counsel would

have to show error "so prejudicial as to vitiate the entire trial."   Response at

32 (citing <u>England v. State</u>, 940 So. 2d 389, 401-402 (Fla. 2006)).   After defense counsel made quite an extensive argument about the victims' lack of fear, a motion for mistrial would not have been well-taken, particularly in the light of the concerns presented by the subject of the motion in limine.

Petitioner has failed to show a reasonable probability that the outcome of the proceeding was negatively affected by counsel's performance.   There is no reasonable probability that the outcome would have been different had counsel been allowed to continue to present argument on the lack of fear as he "unequivocally and repeatedly made his point that the victims' actions belied the testimony that they were fearful."   Response at 32.   Defense counsel did not perform deficiently for failure to move for a mistrial under these circumstances.   As a result, Petitioner has failed to satisfy the prejudice prong of <u>Strickland</u>.   Confidence in the outcome of the proceedings has not been undermined and Petitioner is not entitled to habeas relief on ground four.

The Court finds the state court's determination is consistent with federal precedent.   Although unexplained, the 1st DCA's decision is entitled to AEDPA deference.   Ex. 21.   Applying the look-through presumption set forth in <u>Wilson</u>, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   In short, the state court's adjudication of the claim is not contrary to or an unreasonable application of

31

Strickland and its progeny or based on an unreasonable determination of the facts.   Thus, ground four is due to be denied.

## IX.   GROUND EIGHT

> GROUND EIGHT:   The Petitioner's trial counsel was ineffective for failing to investigate and present a defense that the Petitioner did not shoots [sic] at, within, or into the victims[']s vehicle, including not retaining and calling an expert witness.

Petition at 32.

Respondents submit that Petitioner did not fairly present this claim to the state courts and has not exhausted it.   Response at 35.   In response to this contention, Petitioner concedes that ground eight is unexhausted, Reply at 37-39, but asks that his default of ground eight be excused pursuant to Martinez.

This Court must ask whether Petitioner has satisfied the standard for excusing the default.   As Petitioner had post-conviction counsel, Petitioner must show his post-conviction counsel provided ineffective assistance of counsel by failing to raise this ground in the Amended Rule 3.850 motion and Petitioner must establish that the underlying claim of ineffective assistance of counsel is substantial.

Martinez provides a narrow, equitable, non-constitutional exception to the holding in Coleman.   To the extent Petitioner claims his procedural

default should be excused based on the narrow exception under <u>Martinez</u>, Petitioner must demonstrate the underlying ineffectiveness claim is substantial.  Petitioner has failed to establish his claim is "substantial."  To meet this requirement, Petitioner must demonstrate the claim has some merit. <u>Martinez</u>, 566 U.S. at 14.  In this instance, the underlying ineffectiveness claim raised in ground eight lacks merit; therefore, Petitioner has not demonstrated he can satisfy an exception to the procedural bar.  To explain, the Court provides a merits analysis.

Based on a thorough review of the complete record, Petitioner's underlying claim of ineffective assistance of trial counsel for failure to investigate and present a defense that Petitioner did not shoot at, within, or into the victims' vehicle, including not retaining and calling an expert witness, has no merit.  The record shows defense counsel participated in discovery and prepared for trial.  Ex. 1 at 17.  Defense counsel took numerous depositions and sought more definite addresses.  <u>Id</u>. at 26-30, 44-46.  Based on the motion to suppress, counsel was well aware of the statements Petitioner had given the police and of his admissions.  <u>Id</u>. at 31-34.  Defense counsel listed Petitioner's mother and Robert Allen as witnesses.  <u>Id</u>. at 39, 51.  The state provided defense counsel with discovery, including the Florida Department of Law

Enforcement (FDLE) Report (David Warniment, Firearms Section).   Id. at 20-21, 47.

At trial, David Warniment, the firearms examiner employed by the FDLE, testified   Ex. 4 at 297.   Although he attested there were two areas on the right side of the wheel which could have been caused by the strike or impact of a bullet, he could not definitively say the marks were caused by a bullet striking the wheel.   Id. at 307, 313.   In fact, on cross examination by defense counsel, Mr. Warniment said he could not eliminate the possibility that a bullet could have hit the ground, ricocheted, hit the rim, and then eventually imploded on the curved part of the rim.   Id. at 313-14.   Thus, defense counsel was able to obtain the desired testimony from the state's expert supporting the defense's contention that Petitioner fired one shot down to the ground near the tire.   Ex. 5 at 331, 424.

Petitioner has failed to show his counsel performed deficiently.   Indeed, this Court has found:

> First, whether or not defense counsel retains the services of an expert is trial strategy. Attorneys are generally not held to be constitutionally ineffective because of tactical decisions or strategies. United States v. Guerra, 628 F.2d 410, 413 (5th Cir. 1980), cert denied, 450 U.S. 934 (1981). Moreover, "[e]ven if in retrospect, the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney

would have chosen it." <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983), <u>cert denied</u>, 464 U.S. 1063 (1984).

<u>Sweat v. United States</u>, No. 3:06-CR-379-J-25MCR, 2011 WL 13287076, at *2 (M.D. Fla. Aug. 24, 2011) (not reported in F. Supp.).   Here, defense counsel effectively cross examined the state's expert, producing the desired testimony that the purported damage could have been caused by a ricochet, in line with defense counsel's argument that Petitioner shot down to the ground, near the tire.[9]

Finally, Petitioner's mere speculation that an expert would have been helpful is insufficient to meet the Petitioner's burden of proof.[10]   <u>Id</u>. at *3.

---

[9] Officer Pelletier, on cross examination, testified he found what appeared to be "a ricochet." Ex. 4 at 179-80.

[10] In his Petition, Petitioner surmises that counsel was deficient in his performance because a defense expert "would have testified that if the wheel rim had been hit by a .40 cal[.] bullet in the same manner and direction as the object that hit the wheel rim, the bullet would have penetrated the tire, causing it to lose air and to go flat."   Petition at 32.   Petitioner, in his Reply, alters his underlying contention of ineffectiveness, asserting that counsel's performance was deficient in failing to retain a ballistics expert to opine that no bullet hit the vehicle, including the rim of the wheel.   Reply at 41.   The record shows Petitioner faced an enormous hurdle at trial as he immediately told the police officer at the scene that he fired one shot at one of the tires of the victim's vehicle.   Ex. 1 at 2.   The jury also heard Petitioner's videotaped interview.   Petitioner said, under oath, "I pointed it at the tire, one fire at the tire."   Ex. 5 at 329.   He repeated, "[o]ne shot at the tire."   <u>Id</u>.   He said his intent was to slow the victims down or make them stop.   <u>Id</u>.   He said, "[a]s they drove off, I just pointed the gun and shot at the tire.   I had no idea if I hit the tire or – I just – I just shooted [sic] it down."   <u>Id</u>. at 331.   When asked if he were aiming at the tire, Petitioner responded "[y]eah."   <u>Id</u>.   Again, Petitioner stated, when the victims tried to drive off, "I shoot down at the tire."   <u>Id</u>. at 332.   Joshua Piercy, the driver of the vehicle and one of the victims, testified he heard a gunshot and then something strike the vehicle, sounding like a hammer hitting a nail.   Ex. 4 at 227.   In reaction, Mr. Piercy slammed on the brakes.   <u>Id</u>.   Anna Bass, the

Petitioner has failed to show the required prejudice under <u>Strickland</u> by any failure to call an expert witness.   Just because the state called an expert does not mean that the defense must do the same.   <u>Richter</u>, 562 U.S. at 111 (concluding <u>Strickland</u> "does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense").

There is no reasonable likelihood that the testimony of a defense expert would have changed the verdict.   The state's expert acknowledged that the damage to the rim could have been from a ricochet, and Officer Pelletier testified he thought the damage to the rim came from a ricochet.   Both victims testified to the shot and feeling some impact to the car.   Petitioner, in his interview, admitted repeatedly that he shot at the tire in an attempt to slow or stop the victims' departure, and he achieved his goal as the driver, Mr. Piercy, did briefly stop the car after the impact.

Failing to demonstrate trial counsel's performance was deficient, Petitioner has failed to show that the underlying claim has some merit.   Based

---

other victim, testified she heard a shot hit the car and felt the vibration of the impact.   <u>Id</u>. at 267-68.   Defense counsel countered the state's closing argument, noting that Petitioner was impaired by alcohol and medication when he spoke to the police and Petitioner said he shot down at the ground, supported by the testimony that the strike looked like a ricochet rather than a direct hit.   Ex. 5 at 417, 420-21, 423-24, 427.   Defense counsel told the jury, Petitioner "just fired one shot down to the ground near the tire[,]" hoping to convince the jury that Petitioner was guilty of the lesser included offense of discharging a firearm in public. <u>Id</u>. at 424.

on the above, Petitioner has failed to show he falls within the narrow parameters of the ruling in <u>Martinez</u>, in which the Supreme Court recognized a narrow exception for ineffective assistance of counsel/absence of counsel at initial-review collateral proceedings.   As Petitioner failed to demonstrate the underlying ineffective assistance of counsel claim is a substantial one, he does not fall within this narrow exception.   Thus, he has failed to establish cause for the procedural default of his claim of ineffective assistance of trial counsel raised in ground eight.

Petitioner has failed to show cause for his default of ground eight, and he does not meet the prejudice or manifest injustice exceptions.   Although a petitioner may obtain review of the merits of a procedurally barred claim if he satisfies the actual innocence gateway, Petitioner has not done so.   The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." <u>Johnson v. Ala.</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), <u>cert. denied</u>, 535 U.S. 926 (2002).   Petitioner has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

In conclusion, the Court finds the claim raised in ground eight is unexhausted and procedurally defaulted.   As Petitioner has failed to establish

cause and prejudice or any factors warranting the application of the fundamental miscarriage of justice exception to overcome the default, the court deems the claim raised in ground eight procedurally defaulted, and Petitioner is procedurally barred from raising the unexhausted claim raised in ground eight in this proceeding.

Finally, and alternatively, as for any failure to hire and present an expert, Petitioner does not satisfy the performance and prejudice prongs of Strickland.  Petitioner has not overcome the strong presumption that any decision to forego obtaining an expert to testify on ballistics fell within the wide range of professional competence.  Moreover, even if a ballistics expert had testified for Petitioner, "such would not have significantly diminished the incriminating effect of the other evidence."  Simmons v. State, 105 So. 3d 475, 493 (Fla. 2012) (per curiam).   Indeed, Petitioner has not shown that counsel's performance at trial was deficient in failing to present an expert, nor has Petitioner demonstrated a reasonable probability that, had trial counsel presented an expert, the verdict would have been altered such that the probability was sufficient to undermine the Court's confidence in the result as the evidence against Petitioner was quite strong and confirmed by his videotaped interview and the testimony of the victims, police officers, and FDLE examiner.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2.      This action is **DISMISSED WITH PREJUDICE**.

3.      The **Clerk** shall enter judgment accordingly and close this case.

4.      If Petitioner appeals the denial of his Petition for Writ of Habeas Corpus (Doc. 1), **the Court denies a certificate of appealability**. [11] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

---

[11]  This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 4th day of February, 2021.

_____
BRIAN J. DAVIS
United States District Judge

sa 2/2
c:
Michael Kennedy
Counsel of Record